02-09-463-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND
 DISTRICT OF TEXAS
 FORT
 WORTH
  
 
 


 

NO. 02-09-00463-CV

 

 


 
 
 Dugas Limited
 Partnership, Dugas 1998 Irrevocable Trust, William Bruce Dugas GrandChild
 Trust, James Stephen Turner and Hurley Calister Turner, Jr.,
 Co-Trustees of the
 Dugas 1998 Irrevocable Trust f/b/o William Bruce Dugas
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 Donna Neal Goode
 Dugas and Laura Nicole Dugas
 
 
  
 
 
 APPELLEES
 
 


 

 

------------

 

FROM THE Probate Court OF Denton COUNTY

------------

OPINION

------------

I. 
Introduction

          In this accelerated,
interlocutory appeal, Appellants Dugas Limited Partnership (Dugas, LP); Dugas
1998 Irrevocable Trust (Dugas 1998 Trust); William Bruce Dugas Grandchild Trust
(Grandchild Trust); and James Stephen Turner (Steve) and Hurley Calister
Turner, Jr. (Cal), Co-Trustees of the Dugas 1998 Irrevocable Trust f/b/o
William Bruce Dugas (Bruce) challenge the trial court’s order denying their
special appearances.  In three issues, Appellants argue that general
jurisdiction does not exist over Dugas, LP; that specific jurisdiction does not
exist over the Dugas 1998 Trust, the Grandchild Trust, and Cal and Steve as
co-trustees of the Dugas 1998 Trust; and that the trial court erred by denying
their plea to the jurisdiction and plea in abatement.  We will affirm in part
and reverse and render in part.

II.  Factual[1] and Procedural Background

          Bruce died in January 2008.  Appellee Donna
Neal Goode Dugas married Bruce in 1984 and is his surviving spouse.  Bruce and
Donna had two children, Appellee Laura Nicole Dugas and William Bruce Dugas, II
(William).  Bruce’s mother was Laura Jo Turner Dugas.  Laura Jo’s siblings are
Cal and Steve.  H. Calister Turner, Sr.—Laura Jo, Cal, and Steve’s father—founded
Dollar General.

          Bruce and Donna moved to Aubrey, Texas, in
1995 and resided at 4801 South Highway 377 until 1999.  According to Donna, she
and Bruce “acquired a joint undivided fee simple interest in the Double D
Ranch, located at 5932 Wildcat Road, Aubrey, Denton County Texas 76227 and 6032
Wildcat Road, Aubrey, Denton County Texas” in 1999.  In July or September 2005,
Bruce and Donna ceased living together at the Double D Ranch.[2]
 Bruce resided in Kentucky at the time of his death.  Donna and Laura continue
to reside at the Double D Ranch, and William resides in Corinth, Texas.

          In December 1989, H. Calister Turner,
Sr. and Steve entered into a trust agreement for the creation of the Grandchild
Trust.  H. Calister Turner, Sr. signed the trust agreement as grantor, and
Steve signed as trustee.  The Grandchild Trust was created “for the benefit of
the Grantor’s grandchild, [Bruce],” called for Steve to make income
distributions to Bruce “as [Steve] deems advisable,” and among other things, to
make discretionary corpus distributions for Bruce’s comfort, health,
maintenance, and support.  The Grandchild Trust gave Bruce a general
testamentary power to appoint the assets remaining therein upon his death to
any individual or entity.  If Bruce did not so appoint any person or entity
before his death, the assets were to be allocated pro rata among Bruce’s
children after taxes.  From 1998 to 2007, and at other times during Bruce’s
lifetime, distributions were made to him from the Grandchild Trust by wire
transfer and by check.  The Grandchild Trust was executed in Kentucky.

          In November 1998, Laura Jo, as settlor,
created the Dugas 1998 Trust.  The Dugas 1998 Trust identified Cal and Steve as
trustees and provided that they are responsible for dividing and allocating the
principal among three separate trusts named for Laura Jo’s three children, including
Bruce.  It stated that Laura Jo’s primary concern during the life of the named
beneficiary was for the beneficiary’s health, support, and education, and it gave
Bruce the power to appoint by will his interest therein and provided that the
principal was to be allocated among his then-living descendants upon his death
if he did not exercise the appointment.  The Dugas 1998 Trust made
distributions to Bruce during his lifetime, including distributions from 2003
to 2007.  Laura Jo, Cal, and Steve executed the trust in Florida.[3]

          In February 1998, the LJWD Limited
Partnership was formed by the Limited Partnership Agreement of the LJWD Limited
Partnership.  In April 1998, the LJWD Limited Partnership’s name was changed to
“Dugas Limited Partnership.”  Dugas, LP is “governed by the Uniform Limited
Partnership Act of the State of Delaware.”  The purposes of Dugas, LP are “to
buy, sell, invest in, operate[,] and manage such securities, real estate, and
other assets as the General Partner may determine”; to consolidate investments;
and to pool and protect assets.  The partnership agreement lists Dugas, LP’s
principal place of business and principal office as “4801 South Highway 377,
Aubrey, Texas  76227.”  Dugas, LP’s general partner is Dugas Asset Management
Corp.  Bruce signed the partnership agreement as “President” of Dugas Asset
Management Corp., and an exhibit to the partnership agreement identified Dugas
Asset Management Corp.’s address as:

Dugas Asset
Management

Corp.

c/o William B.
Dugas

Double D Ranch,
4801 South

Highway 377

Aubrey, Texas
76227

 

As of December 31, 2008, Dugas, LP had fifteen limited
partners.  The partnership agreement listed only one asset of Dugas, LP:  Dugas
Family Partners, a Texas General Partnership.

          The Family Office, L.L.C. is a Tennessee
limited liability company that the Turner and Dugas families established to
provide services to Turner and Dugas family members, their trusts, and the
entities that they control.  David Wilds is the chief executive officer of The
Family Office, and Amy Freeny is the tax manager.  The distributions that the
Grandchild Trust and the Dugas 1998 Trust made to Bruce during his lifetime were
transferred by the Family Office.  The Family Office has no offices outside of
Nashville, Tennessee.

          A petition to probate Bruce’s will was filed
in Kentucky in February 2008.  In February 2009, Donna sued Dugas, LP; the
Grandchild Trust; the Dugas 1998 Trust; Ernest Pardue, in his capacity as the
executor of Bruce’s estate; Laura; William; and the Wayne F. Dugas, Sr. 1998
Trust in Texas.[4] 
Donna sought (1) an accounting of the assets of Bruce’s estate and of the
assets and distributions of the trusts; (2) a partition of the Double D
Ranch; and (3) declarations regarding the character of the trusts for
which Bruce was a beneficiary, whether certain distributions made to Bruce were
advancements or loans, and whether Donna is entitled to recover as community
property any income from appreciation of the trusts’ assets.[5]

          In March 2009, Pardue filed a “Verified
Petition for the Settlement of the Estate of William Bruce Dugas, Deceased, and
Complaint for Declaratory Judgment” in Kentucky.  According to Donna, the
petition sought relief similar to the relief that she seeks in her suit against
Bruce’s estate and the trusts.

          In July 2009, Laura filed cross-claims
against Cal and Steve as co-trustees of the Dugas 1998 Trust in Texas.  She
sought an accounting of the Dugas 1998 Trust and alleged that Cal and Steve
breached fiduciary duties that they owed to her as trustees of the Dugas 1998
Trust by failing to investigate her needs and by failing to make sufficient
distributions to her.

          Dugas, LP; the Dugas 1998 Trust; the
Grandchild Trust; and Cal and Steve as co-trustees of the Dugas 1998 Trust
filed special appearances challenging the trial court’s personal jurisdiction
over them.[6]
 The trial court ultimately signed an order denying Dugas, LP’s special
appearance on the basis that general jurisdiction exists over it “based, in
part, on the documentary proof showing that it had a principal place of
business in Texas.”  The trial court denied the other defendants’ special
appearances because “specific jurisdiction exists over [each of them].  The
facts of this case are directly on point with those set forth in Steen Seijo
v. Miller, 425 F. Supp. 2d 194 (D.P.R. 2006).”  The trial court denied any
plea in abatement for each of the claims asserted by Laura against Cal and
Steve as co-trustees of the Dugas 1998 Trust but granted any plea in abatement
for the claims asserted by Donna against Dugas, LP, the Dugas 1998 Trust, and
the Grandchild Trust, staying those claims “in the interest of comity,”
“pending resolution in the Kentucky proceedings.”  Dugas, LP, the Dugas 1998
Trust, the Grandchild Trust, and Cal and Steve as the Dugas 1998 Trust’s
co-trustees appeal.

III. 
Standard of Review, Burden of Proof, and Personal Jurisdiction

          Whether a trial court has
personal jurisdiction over a defendant is a question of law, which we review de novo. 
Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 574 (Tex. 2007); Luxury
Travel Source v. Am. Airlines, Inc., 276 S.W.3d 154, 160 (Tex. App.—Fort
Worth 2008, no pet.).  In a suit against a nonresident defendant, the initial
burden of proof is on the plaintiff to plead sufficient allegations to bring
the defendant within the provisions of the Texas long-arm statute.  Kelly v.
Gen. Interior Constr., Inc., 301 S.W.3d 653, 658 (Tex. 2010).  “This
minimal pleading requirement is satisfied by an allegation that the nonresident
defendants are doing business in Texas.”  Huynh v. Nguyen, 180 S.W.3d
608, 619 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  The plaintiff’s
original pleadings as well as its response to the defendant’s special
appearance can be considered in determining whether the plaintiff satisfied
that burden.  Flanagan v. Royal Body Care, Inc., 232 S.W.3d 369, 374
(Tex. App.—Dallas 2007, pet. denied).  Once the plaintiff has pleaded
sufficient jurisdictional allegations, the defendant filing a special
appearance bears the burden to negate all bases of personal jurisdiction
alleged by the plaintiff.  Kelly, 301 S.W.3d at 658.  In other words,
the defendant must disprove the existence of minimum contacts sufficient to
establish personal jurisdiction over it—general, specific, or both—as alleged
by the plaintiff.[7] 
Am. Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 806–07
(Tex. 2002), cert. denied, 537 U.S. 1191 (2003).

          When a trial court enters an order denying a
special appearance and issues findings of fact and conclusions of law, the
appellant may challenge the fact findings on legal and factual sufficiency
grounds.  BMC Software, 83 S.W.3d at 794.  Here, the trial court did not
issue separate findings of fact and conclusions of law, but it detailed in its
order denying Appellants’ special appearances the factual and legal bases for
its ruling.  We may review the trial court’s resolution of disputed fact issues
for legal and factual sufficiency under the same standards of review that we
apply in reviewing a jury’s or trial court’s findings of fact at trial.[8] 
Id.; Luxury Travel Source, 276 S.W.3d at 161; see Kelly,
301 S.W.3d at 659.  We review a trial court’s conclusions of law as a legal
question; the appellant may not challenge a trial court’s conclusions of law
for factual insufficiency.  BMC Software, 83 S.W.3d at 794.

          A nonresident defendant is subject to the
personal jurisdiction of Texas courts if (1) the Texas long-arm statute
authorizes the exercise of jurisdiction and (2) the exercise of
jurisdiction does not violate federal and state constitutional due process
guarantees.  Kelly, 301 S.W.3d at 657 (citing Scholobohm v. Schapiro,
784 S.W.2d 355, 356 (Tex. 1990)).  The broad language of the long-arm statute’s
“doing business” requirement permits the statute to reach as far as the federal
constitutional requirements of due process will allow.  Guardian Royal
Exchange Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223,
226 (Tex. 1991).    The exercise of personal jurisdiction will not
violate due process “when the nonresident defendant has established minimum
contacts with the forum state, and the exercise of jurisdiction comports with ‘traditional
notions of fair play and substantial justice.’”  Moki Mac, 221 S.W.3d at
575 (citing Int’l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct.
154, 158 (1945)).

          A nonresident defendant establishes minimum
contacts when it purposefully avails itself of the privilege of conducting
activities within the forum state, thus invoking the benefits and protections
of its laws.  Kelly, 301 S.W.3d at 657–58 (citing Retamco Operating,
Inc. v. Republic Drilling Co., 278 S.W.3d 333, 338 (Tex. 2009)).  The
factors important in determining whether a defendant has purposefully availed
itself of the forum are (1) only the defendant’s contacts with the forum
are relevant, not the unilateral activity of another party or a third person;
(2) the contacts relied upon must be purposeful rather than merely
fortuitous; and (3) the defendant must seek some benefit, advantage, or
profit by availing itself of the forum.  Michiana Easy Livin’ Country, Inc.
v. Holten, 168 S.W.3d 777, 785 (Tex. 2005).  Although not determinative,
foreseeability is an important consideration in deciding whether the
nonresident defendant purposefully has established minimum contacts with
Texas.  BMC Software, 83 S.W.3d at 795.

          A nonresident’s contacts can give rise to
either general or specific jurisdiction.  Retamco, 278 S.W.3d at 338. 
General jurisdiction arises when a defendant’s contacts with the forum are
continuous and systematic so that the exercise of jurisdiction is proper even
if the cause of action did not arise from or relate to the defendant’s forum
contacts.  Moki Mac, 221 S.W.3d at 575; Luxury Travel Source, 276
S.W.3d at 162.  In contrast, specific jurisdiction is established if the
defendant’s alleged liability arises from or is related to an activity
performed in the forum.  Moki Mac, 221 S.W.3d at 576.  A Texas court may
assert specific jurisdiction over an out-of-state defendant if the defendant’s
contact with the state is purposeful and the injury arises from or relates to
those contacts.  Id. at 572.

          Once it has been determined that the
nonresident defendant purposefully established minimum contacts with the forum
state, the contacts are evaluated in light of other factors to determine
whether the assertion of personal jurisdiction comports with fair play and
substantial justice.  Guardian Royal, 815 S.W.2d at 228 (citing Asahi
Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113–15, 107 S. Ct. 1026,
1033–34 (1987)).  These factors include (1) “the burden on the defendant,”
(2) the interests of the forum state in adjudicating the dispute, (3) “the
plaintiff’s interest in obtaining convenient and effective relief,” (4) “the
interstate judicial system’s interest in obtaining the most efficient
resolution of controversies,” and (5) “the shared interest of the several
States in furthering fundamental substantive social policies.”  Id.  The
burden is on the defendant to “present ‘a compelling case that the presence of some
consideration would render jurisdiction unreasonable.’”  Guardian Royal,
815 S.W.2d at 231 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462,
477, 105 S. Ct. 2174, 2185 (1985)).  Only in rare circumstances will the
exercise of jurisdiction not comport with fair play and substantial justice
when the nonresident defendant has established minimum contacts.  Id.

IV.  General Jurisdiction—Dugas,
LP

          In the first issue, Dugas, LP challenges the
trial court’s finding that general jurisdiction exists over it “based, ‘in
part, on the documentary proof showing that it had a principal place of business
in Texas.’”  Dugas, LP argues that the evidence is legally and factually
insufficient to support the finding that its principal place of business is in
Texas because, contrary to the statement in the partnership agreement
identifying Dugas, LP’s principal place of business in Texas, Freeny stated in
her affidavit that Dugas, LP has always had its principal place of business in
Nashville, Tennessee, and has never had its principal office in Texas.  Dugas,
LP additionally argues that the exercise of jurisdiction over it does not
comport with fair play and substantial justice.  Donna responds that general
jurisdiction exists over Dugas, LP because it is present in Texas.

          A.      Minimum Contacts

          In Cardinal States Gathering
Co. v. Conoco, Inc., Conoco sued several entities to recover cost overruns
for a pipeline that it had built in Virginia and West Virginia.  No.
14-00-00537-CV, 2001 WL 82322, at *1 (Tex. App.—Houston [14th Dist.] Feb. 1,
2001, no pet.) (not designated for publication).  The trial court denied Cardinal
States’s special appearance.  Id. at *2.  On appeal, Conoco argued that
the trial court had jurisdiction over Cardinal States because its partnership
agreement identified Houston as Cardinal States’s place of business.  Id.
at *4.  Cardinal States did not challenge that its principal place of business
was Houston, but it argued that its only activities related to a single
gas gathering system on the East Coast.  Id.  The court of appeals held
that general jurisdiction existed over Cardinal States, reasoning as follows:

Cardinal States
cites no authority for the proposition that, even though the Partnership
Agreement plainly states its principal place of business is Texas, it is not
subject to jurisdiction in Texas.

 

          Under
Texas law, venue is proper against a partnership wherever its principal office
is located.  Although a particular court may have jurisdiction over a defendant
even though the county in which that court is situated is not proper for venue
purposes, the converse is not true, at least not where venue is based upon the
defendant’s presence in the county.  Physical presence is sufficient to vest a
court with jurisdiction over a defendant.  By designating Houston as Cardinal
States’ place of business, Cardinal States is present in Texas regardless of
where it actually carries on the partnership business, and therefore, we hold
that the trial court did not err in finding Cardinal States is amenable to
jurisdiction in Texas.

 

Id.
(citations omitted) (citing Burnham v. Superior Court of Cal., 495 U.S.
604, 619, 110 S. Ct. 2105, 2115 (1990)) (“The short of the matter is that
jurisdiction based on physical presence alone constitutes due process because
it is one of the continuing traditions of our legal system that define the due
process standard of ‘traditional notions of fair play and substantial justice.’”).

          This case is factually similar to Cardinal
States because, like Conoco’s argument that general jurisdiction existed
over Cardinal States because its partnership agreement identified Houston as
its principal place of business, Donna argues here that general jurisdiction
exists over Dugas, LP because its partnership agreement identified Aubrey,
Texas, as its principal place of business.  But unlike in Cardinal States,
in which Cardinal States did not challenge Conoco’s contention that its
principal place of business was Houston, here, Dugas, LP disputes that its
principal place of business is Texas, directing us to Freeny’s affidavit in
which she states that Dugas, LP’s principal place of business is Tennessee, not
Texas.  Dugas, LP thus contends that “Freeny’s affidavit establishes that no
overt acts were taken by Dugas, LP in Texas and the trial court’s conclusion of
law that general jurisdiction rests on such alleged conduct is erroneous.”

          Contrary to Dugas, LP’s argument, the
evidence is not legally or factually insufficient to support the trial court’s
determination to resolve the place-of-business dispute in favor of Donna simply
because Dugas, LP points to a single piece of evidence that contradicts the
declaration in its own partnership agreement that its principal place of
business is Texas.  This is because there is other evidence relevant to the special
appearance inquiry that supports the trial court’s finding.  Specifically, the
address listed in Dugas, LP’s partnership agreement—4801 South Highway 377,
Aubrey, Texas  76227—is the exact same address where Bruce and Donna lived when
they moved to Texas in 1995.  Dugas, LP’s general partner is Dugas Asset
Management Corp., whose address is also identified in the partnership agreement
as 4801 South Highway 377, Aubrey, Texas 76227.  Bruce—not Cal or Steve or any
of Bruce’s other siblings—signed the partnership agreement as “President” of
Dugas Asset Management Corp.  Under the terms of the partnership agreement,
Dugas Asset Management Corp., as general partner, was tasked with the
responsibility of managing Dugas, LP,[9]
which exists as a result of the limited partnership agreement entered into
between its general partner and its limited partners.[10]

          Significantly, the purposes of Dugas, LP are
“to buy, sell, invest in, operate[,] and manage such securities, real estate,
and other assets as the General Partner may determine”; to consolidate those
investments; and to pool and protect those assets.  The only asset of
Dugas, LP that is identified in the partnership agreement is Dugas Family
Partners, a Texas General Partnership.  The partnership agreement lists
the fair market value of Dugas Family Partners at over $164 million.  Therefore, based on this record, Dugas, LP’s only
function is to manage the valuable assets of a Texas General Partnership—an
activity that requires Dugas, LP to utilize Texas-based assets.  See Retamco,
278 S.W.3d at 339–40 (reasoning that jurisdiction exists over nonresident in
part based on nonresident’s management of a Texas asset).

          Dugas, LP argues that the principal-place-of-business
declaration was not an overt act of the entity itself but a unilateral act
performed by the individuals who formed the entity and that the declaration is
not a relevant contact to consider in the minimum contacts analysis because it
was made more than ten years before suit was filed.  Unlike Donna, who cited
and relied on Cardinal States, Dugas, LP does not direct us to any authority
holding that we may not consider the provision in the partnership agreement for
purposes of determining whether personal jurisdiction exists over the limited partnership
formed by the agreement.[11] 
The partnership agreement that Donna directs us to governs Dugas, LP, not some
other limited partnership.  Aside from Freeny’s affidavit, there is no evidence
that Dugas, LP has not operated under the partnership agreement since 1998.[12] 
And unlike with its name, Dugas, LP has never amended the principal-place-of-business
declaration.  The principal-place-of-business declaration is, therefore, a
proper contact to consider for purposes of considering personal jurisdictional.

          Under the appropriate standards of review,
the evidence is legally and factually sufficient to support the trial court’s
finding that Dugas, LP’s principal place of business is Texas.  In light of the
sufficient evidence connecting Dugas, LP with Texas, we cannot conclude that
Dugas, LP’s listing the principal place of business as Aubrey, Texas, was
merely fortuitous and not made for the purpose of deriving some benefit or
advantage therefrom.  See Michiana, 168 S.W.3d at 785; see
also Retamco, 278 S.W.3d at 339–40 (reasoning that the minimum contacts
analysis is focused on the quality and nature of the defendant’s contacts,
rather than their number).  Considering this and the relevant caselaw, the
trial court’s conclusion that general jurisdiction exists over Dugas, LP
because its principal place of business is in Texas is not erroneous.  See
Cardinal States, 2001 WL 82322, at *4.  Accordingly, we hold that the trial
court did not err by determining that Dugas, LP failed to negate all bases of
personal jurisdiction, particularly, general jurisdiction.

          B.      Fair Play and
Substantial Justice

          Dugas, LP contends that it would be unduly burdened by
a trial in Texas because all of the actions and omissions that are the bases of
Donna’s claims against Dugas, LP occurred in Tennessee.  We cannot completely agree
because we held above that the evidence is legally and factually sufficient to
support the trial court’s finding that Dugas, LP’s principal place of business
is Texas.  Further, Dugas, LP argues that the interests of Texas in
adjudicating the dispute are minimal, but part of Donna’s claims against Dugas,
LP concern a partition of real property in Texas, and Texas has a substantial
interest in adjudicating probate disputes, including property held in Texas.  See
Brittingham-Sada de Powers v. Ancillary Estate of Brittingham-McClean,
158 S.W.3d 518, 525 (Tex. App.—San Antonio 2004, pet. denied).  Dugas, LP
contends that there is a risk of inconsistent rulings or judgments if the trial
court exercises jurisdiction, but the trial court granted Dugas, LP’s plea in
abatement and stayed the claims that Donna asserted against Dugas, LP, “pending
resolution in the Kentucky courts.”  We cannot conclude that Dugas, LP
presented a compelling case that other considerations would render exercising
jurisdiction unreasonable.  See Guardian Royal, 815 S.W.2d at 231.

          We hold that the trial court did not err by
denying Dugas, LP’s special appearance.  Accordingly, we overrule Dugas, LP’s
first issue.

V. 
Specific Jurisdiction

          In the second issue, the Dugas
1998 Trust, the Grandchild Trust, and Cal and Steve as co-trustees of the Dugas
1998 Trust argue that specific jurisdiction does not exist over each of them.  They
contend that Donna and Laura failed to meet their burden of pleading facts
necessary to support specific jurisdiction, that they have no contacts with
Texas that are sufficient to support an exercise of specific jurisdiction, and
that the Seijo decision referenced in the trial court’s order is distinguishable
from the facts of this case.

          The Supreme Court in Burger King
discussed purposeful availment and reasoned that

where the defendant
“deliberately” has engaged in significant activities within a State, or has
created “continuing obligations” between himself and residents of the forum,
he manifestly has availed himself of the privilege of conducting business
there, and because his activities are shielded by “the benefits and
protections” of the forum’s laws it is presumptively not unreasonable to
require him to submit to the burdens of litigation in that forum as well.

 

471 U.S. at 475–76,
105 S. Ct. at 2184 (emphasis added) (citations omitted).  Several courts have
subsequently considered a nonresident defendant’s “continuing obligations”
between himself and the residents of the forum in determining whether the
defendant was amenable to personal jurisdiction.  See, e.g., Seijo v. Miller,
425 F. Supp. 2d 194, 200 (D. P.R. 2006); Cummings
v. Pittman, 239 S.W.3d 77, 87 (Ky. 2007).

          In Seijo, the district court addressed
whether the plaintiffs had established the existence of specific jurisdiction
over two nonresident defendants who were the trustees of a trust in which the
plaintiffs were the sole beneficiaries of its undistributed income.  425 F.
Supp. 2d at 197.  The trust was established in Louisiana for the benefit of the
plaintiffs’ mother, Mrs. Seijo.  Id.  Mrs. Seijo was a resident of
Puerto Rico when the trust was executed and received several trust
disbursements while in Puerto Rico.  Id. at 197, 200.  After she died,
the plaintiffs, her children, sued the trustees, who were both residents of
Louisiana, for an accounting and damages.  Id. at 197.  The district
court noted that the litigation arose out of the defendants’ actions in
administering the trust, which was established for the benefit of Mrs. Seijo, a
resident of Puerto Rico; that the plaintiffs’ specific allegations were that
the defendants, as trustees of the 1996 trust, did not make proper
disbursements to Mrs. Seijo; that Mrs. Seijo was a resident and domiciliary of
Puerto Rico at the time the trust was established; that the grantor of the
trust was a domiciliary of Puerto Rico at the time of his death; and that
several trust disbursements were indeed sent to Mrs. Seijo in Puerto Rico.  Id.
at 200–01.  Concluding that the trustee defendants had purposefully availed
themselves of the forum, the district court reasoned,

These circumstances
are sufficient to establish purposeful availment on the part of the defendants
in this case.  As trustees, they voluntarily took on the responsibility of
administering a trust established for the benefit of a resident of Puerto
Rico.  Entering into this agreement, which had a substantial connection to
Puerto Rico, made it foreseeable that the defendants may be brought before a
federal court in Puerto Rico.

 

Id. at 200.[13]

          In Cummings, the Supreme Court
of Kentucky relied on Seijo as persuasive authority.  239 S.W.3d at 87
(Ky. 2007).  There, the court held that the nonresident defendant lawyer—who conceded
that he was subject to personal jurisdiction in Kentucky for claims arising
from legal services performed but challenged the exercise of jurisdiction over
him in his role as trustee of a trust that he had drafted—was amenable to
personal jurisdiction in Kentucky as a trustee.  Id. at 89–90.  Relying
in part on Burger King, the court stated,

One may reasonably
infer that from the outset Mr. Boose anticipated performing ongoing fiduciary
services with respect to the trust.  Necessarily, such services were to be
performed for benefit of Kentucky citizens and would require an extended period
of time.  Burger King recognized that intentionally creating continuing
obligations with residents of the forum would be sufficient to subject the
nonresident to the burden of litigating in the forum.

 

Id. at
87.

          Burger
King, Seijo, and Cummings are instructive on the arguments
that Appellants raise in the second issue.

          A.      Pleadings

          Regarding
Appellants’ challenges to Appellees’ pleadings, Donna alleged in part the
following:  the Dugas 1998 Trust “is doing business in the State of Texas by,
for example, entering into contracts, making distributions and/or loans to
individuals in Texas . . . , and negotiating payments in Texas”;
the Grandchild Trust “is doing business in the State of Texas by, for example,
entering into contracts, making distributions and/or loans to individuals in
Texas . . . , and negotiating payments in Texas”; “the Siblings
[Laura Jo, Cal, and Steve] created reciprocal trusts for the benefit of each of
their respective children.  The siblings agreed to serve as trustee and
co-trustee of each others’ trusts.  One of these reciprocal trusts was the
Dugas 1998 Trust”; Bruce “was the beneficiary of several grantor trusts,
including the [Grandchild Trust] and Dugas 1998 Trust [from] which he was and
is entitled to receive distributions.”

          Laura
alleged in part the following:  “[A]ssuming Bruce failed to exercise his power
of appointment granted in the [Dugas 1998 Trust], Laura . . . became
[a] current beneficiar[y] of the [Dugas 1998 Trust]”; “At the time that the
[Dugas 1998 Trust] was executed, and Cal and Steve Turner agreed to serve as
Bruce’s Co-Trustees, Bruce was a longtime resident of Texas.  Cal and Steve
Turner knew that their duties would involve significant contacts with Texas and
with a Texas beneficiary”; “The terms of the [Dugas 1998 Trust] require that
Steve and Cal Turner investigate the beneficiary’s circumstances to determine
how much should be distributed for the beneficiary’s health, support, and
education.  That investigation necessarily requires regular contact with
Texas”; and “Despite her significant rights in the [Dugas 1998 Trust] . . . ,
Laura is forced to live in borderline poverty due to the neglect of her
Co-Trustees. . . .  [A]s far as she knows[,] the Co-Trustees
have personally made no investigation regarding her health, education, or
support.”

          We hold
that Donna and Laura pleaded sufficient
allegations to bring the defendants within the provisions of the Texas long-arm
statute.  See Burger King, 471 U.S. at 475–76, 105 S. Ct. at
2184; Seijo, 425 F. Supp. 2d at 200; Cummings,
239 S.W.3d at 87; Huynh, 180 S.W.3d at 619; see also Retamco, 278
S.W.3d at 337 (reasoning that because the Texas long-arm statute’s broad
doing-business language allows the statute to reach as far as the federal
constitutional requirements of due process will allow, “we only analyze whether
[appellee’s] acts would bring [appellee] within Texas’[s] jurisdiction
consistent with constitutional due process requirements”).  We overrule this
part of Appellants’ second issue.

          B.      Dugas 1998 Trust, Cal, and Steve—Minimum
Contacts

          The special appearance evidence demonstrates
that Bruce was a resident of Texas when both Cal and Steve agreed to become
co-trustees of the Dugas 1998 Trust, which was created in November 1998.  Cal
testified in his deposition that when he agreed to become a co-trustee, he knew
that Bruce was a resident of Texas and he understood that he would have
obligations to Bruce under the trust.  Cal agreed that he currently has
obligations under the trust to both Laura and William, but he stated that he
relied on the Family Office for processing distribution requests.

          Steve testified that he knew Bruce was a
resident of Texas at some point from 1998 until his death, and he agreed that
he accepted continuing obligations to the beneficiaries of the Dugas 1998 Trust
when he became a co-trustee in 1998 and that he has continuing obligations to
Laura as a beneficiary of the trust.

          Among other things, the Dugas 1998 Trust
required Cal and Steve to

distribute to any
one or more of the named beneficiary and his or her descendants living at the
time of the distribution as much of the net income and principal of the trust
named for the named beneficiary . . . as the trustee from time to
time determines to be required for their respective health, support[,] and
education, and the trustee . . . believes desirable for their
respective interests.  [Emphasis added.]

 

The Dugas 1998 Trust thus required Cal and Steve as
co-trustees to make ongoing determinations concerning the amount of
distributions necessary for Bruce’s health, support, and education.  The record
shows that the Dugas 1998 Trust made numerous distributions to Bruce during his
lifetime, including from 2003 to 2007.  Wilds, however, stated in his affidavit
that the Dugas 1998 Trust “does not do business in Texas, and has never done
business in Texas.”

          The Dugas 1998 Trust, Cal, and Steve rely on
Balken v. Mellon Bank, N.A., and the authorities cited therein to
support their argument that specific jurisdiction does not exist.  No.
05-97-01520-CV, 2000 WL 979705, at *4 (Tex. App.—Dallas 2000, no pet.) (not
designated for publication)  In that case, Balken, a “remaining” beneficiary of
a trust of which Mellon Bank was the trustee, sued Mellon Bank in Texas for
negligence.  Id. at *1.  The court of appeals affirmed the trial court’s
judgment sustaining Mellon Bank’s special appearance, stating in part that the
distribution of trust assets to the primary beneficiary, who had been a Texas
resident, was insufficient to establish minimum contacts.  Id. at *3–4. 
But Balken is distinguishable from this case because the plaintiff there
was a nonresident of Texas.  Id. at *1.  Balken thus involved a
nonresident of Texas suing a nonresident of Texas in Texas.  In this case,
Laura and Donna are both Texas residents and have been so since the Dugas 1998
Trust was created.

          We hold that the evidence is sufficient to
support the trial court’s implied findings for specific jurisdiction.  Because
Cal and Steve purposefully created ongoing obligations between themselves and
Bruce, a Texas resident, when they agreed to become co-trustees of the Dugas
1998 Trust, which made numerous distributions to Bruce during his lifetime,
each could have reasonably anticipated being haled into a Texas court to defend
against Donna’s and Laura’s claims arising from or relating to those contacts. 
Therefore, we hold that the trial court did not err by determining that the
Dugas 1998 Trust, Cal, and Steve failed to negate all bases of personal
jurisdiction and by denying the special appearances of the Dugas 1998 Trust and
of Cal and Steve as co-trustees of the Dugas 1998 Trust.  See Burger
King, 471 U.S. at 475–76, 105 S. Ct. at 2184; Seijo, 425 F. Supp. 2d at 200; Moki Mac, 221 S.W.3d at
572, 576; Cummings, 239 S.W.3d at 87.  We overrule this part of Appellants’
second issue.

          C.      Grandchild Trust—Minimum Contacts

          Unlike the Dugas 1998 Trust, which was created in part
for the benefit of Bruce, a resident of Texas in 1998, the Grandchild Trust was
created in 1989—before Bruce moved to Texas.[14]
 Although Wilds’s affidavit confirms that
distributions were made to Bruce from the Grandchild Trust while Bruce lived in
Texas, those distributions were made to Bruce in Texas only as a result of his
unilateral act of moving to Texas several years after the creation of the
trust.  Unlike the trusts in Seijo and Cummings, which were
created for the benefit of a beneficiary who was a resident of the forum, the
Grandchild Trust was not created for the benefit of a Texas resident, nor did
its trustee voluntarily undertake continuing obligations for the benefit of a
Texas resident.  See Seijo, 425 F. Supp.
2d at 200–01; Cummings, 239 S.W.3d at 86–87; see also Hanson
v. Denckla, 357 U.S. 235, 251–52, 78 S. Ct. 1228, 1238–39 (1958).  Donna
directs us to no other evidence supporting the trial court’s conclusion that
specific jurisdiction exists over the Grandchild Trust.  Accordingly, we hold
that the Grandchild Trust negated all bases of personal jurisdiction asserted
by Donna and that the trial court erred by concluding that specific
jurisdiction exists over the Grandchild Trust.  We sustain this part of
Appellants’ second issue.

          D.      Fair
Play and Substantial Justice

          The Dugas 1998 Trust, Cal, and Steve argue
that asserting personal jurisdiction over them does not comport with fair play
and substantial justice.  Their arguments mirror those made by Dugas, LP
above.  With one exception, our analysis remains unchanged.  Cal and Steve’s
father founded Dollar General.  Cal testified that he has a lease agreement for
a private jet that he uses maybe fifty hours a year, and Steve testified that
he owns a Turbo Prop jet that flies about sixty hours a year.  Both have
visited Texas numerous times in the course of working for Dollar General, and
both are residents of Tennessee, not Kentucky, where Pardue filed his “Verified
Petition for the Settlement of the Estate of William Bruce Dugas, Deceased, and
Complaint for Declaratory Judgment.”[15] 
Laura, on the other hand, states that she is a “high school student of very
limited personal means.”  We cannot conclude that the Dugas 1998 Trust, Cal,
and Steve presented a compelling case that other considerations would render
exercising specific jurisdiction unreasonable.  See Guardian Royal, 815
S.W.2d at 231.  Therefore, we overrule the remainder of Appellants’ second
issue.

VI.  Dominant Jurisdiction

          In their third issue, Appellants argue that the trial
court erred by denying their plea to the jurisdiction because the “Allen
Circuit [C]ourt” in Kentucky has dominant jurisdiction over the matters
pertaining to the administration of Bruce’s estate.

          The general rule of dominant jurisdiction is
that where a suit would be proper in more than one county, the county in which
the suit was first filed acquires dominant jurisdiction to the exclusion of
other counties of equal stature.  Curtis v. Gibbs, 511 S.W.2d 263, 267
(Tex. 1974).  However, “the mere pendency of an action in one state will not be
a ground for abating a suit in another state between the same parties and
involving the same subject matter.”  Crown Leasing Corp. v. Sims, 92
S.W.3d 924, 927 (Tex. App.—Texarkana 2002, no pet.).  This is because “[c]ourts
of sister states are considered foreign to each other, and a suit pending in
another state may not be pleaded in abatement of another suit involving the
same subject matter brought in another state.”  Id.

          Appellants did not argue in their plea to
the jurisdiction that a Kentucky court has dominant jurisdiction over the
claims asserted by Donna; instead, they raised the complaint in their plea in
abatement.  See Tex. R. App. P. 33.1.  The trial court specifically
granted any plea in abatement for the claims asserted by Donna against Dugas,
LP; the Dugas 1998 Trust; and the Grandchild Trust, staying those claims “in
the interest of comity,” “pending resolution in the Kentucky proceedings.”  To
the extent Appellants preserved this argument for appellate review, the only
petition pending in “Allen Circuit [C]ourt” is Pardue’s “Verified Petition for
the Settlement of the Estate of William Bruce Dugas, Deceased, and Complaint
for Declaratory Judgment,” which was filed after Donna filed her
original petition in Texas.[16]
 Nor do Appellants direct us to any authority contrary to Crown Leasing’s
reasoning that dominant jurisdiction generally does not apply to suits in
different states.  We overrule this part of Appellants’ third issue.

          Appellants also argue that the trial court
erroneously denied their plea in abatement in regard to the claims brought by
Laura because of the possibility of conflicting rulings.  We fail to see how
there is any possibility of conflicting rulings, however, because the claims that
Laura has asserted against the co-trustees—seeking an accounting of the Dugas
1998 Trust and alleging that Cal and Steve breached fiduciary duties that they
owed to her as trustees of the Dugas 1998 Trust by failing to investigate her
needs and by failing to make sufficient distributions to her—have not been raised
in the Kentucky litigation.  We overrule Appellants’ third issue.

VII. 
Conclusion

          Having sustained part of Appellants’ second issue, we
reverse the part of the trial court’s order denying the Grandchild Trust’s
special appearance and render judgment dismissing Donna’s claims against the
Grandchild Trust.  Having overruled Appellants’ remaining issues, we affirm the
remainder of the trial court’s order.

 

 

BILL MEIER
JUSTICE

 

PANEL:  DAUPHINOT, WALKER,
and MEIER, JJ.

 

WALKER, J. filed a concurring
and dissenting opinion.

 

DELIVERED:  March 31, 2011

 


 
 
 
 


 




 








APPENDIX

 

 

 

Families

 

•H. Calister Turner,
Sr.’s Children:

          -Hurley Calister
Turner, Jr. (Cal).

          -James Stephen Turner
(Steve).

          -Laura Jo Turner Dugas.

 

•Laura Jo Turner Dugas’s Children:

          -Wayne F. Dugas, Jr.

          -Stephen H. Dugas.

          -William Bruce Dugas
(Bruce).

 

•William Bruce Dugas and Donna
Neal Goode Dugas:

          -Married 1984.

          -Children:  William
Bruce Dugas, II and Laura Nicole Dugas.      

          -Moved to Texas 1995.

          -Ceased living together
2005.

          -Bruce lived in
Kentucky at his death.

          -Donna, Laura, and
William live in Texas.

 

 

Entities

 

•William Bruce Dugas
Grandchild Trust (Grandchild Trust):

          -December 1989.

          -H. Calister
Turner, Sr. and Steve entered into trust agreement for the creation of the
Grandchild Trust.

          -H. Calister
Turner, Sr. signed trust agreement as grantor.  Steve signed as trustee.

          -Created “for the
benefit of the Grantor’s grandchild, [Bruce].”

 

•Dugas 1998 Irrevocable Trust
(Dugas 1998 Trust):

          -November 1998.

          -Laura Jo, as settlor,
created the Dugas 1998 Trust.

          -Cal and Steve are
trustees.

          -Trustees responsible
for dividing and allocating the principal among three separate trusts named for
Laura Jo’s three children, including Bruce.

 

•Dugas Limited Partnership
(Dugas, LP):

          -February 1998.

          -General partner is
Dugas Asset Management Corp.

          -Bruce signed as
“President” of Dugas Asset Management Corp.

          -Partnership agreement
listed only one asset of Dugas, LP:  Dugas Family Partners, a Texas General
Partnership.

          -Purposes is “to buy,
sell, invest in, operate[,] and manage such securities, real estate, and other
assets as the General Partner may determine”; to consolidate investments; and
to pool and protect assets.

          -Principal place of
business and principal office is “4801 South Highway 377, Aubrey, Texas 
76227.”

 

•The Family Office L.L.C.:

          -Tennessee limited
liability company.

          -Established by Turner
and Dugas families to provide services to Turner and Dugas family members,
their trusts, and the entities that they control.

 






 
 
 
 
 
 



 



 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND
 DISTRICT OF TEXAS
 FORT
 WORTH
  
 
 


 

NO. 02-09-00463-CV

 

 


 
 
 Dugas Limited
 Partnership, Dugas 1998 Irrevocable Trust, William Bruce Dugas GrandChild
 Trust, James Stephen Turner and Hurley Calister Turner, Jr., Co-Trustees of
 the Dugas 1998 Irrevocable Trust f/b/o William Bruce Dugas
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 Donna Neal Goode
 Dugas and Laura Nicole Dugas
 
 
  
 
 
 APPELLEES
 
 


 

----------

 

FROM THE Probate Court OF Denton COUNTY

----------

 

CONCURRING AND DISSENTING OPINION

----------

 

I.  Introduction

I
agree with the Majority Opinion’s holdings that specific jurisdiction exists
concerning Appellees Donna Neal Goode Dugas and Laura Nicole Dugas’s claims
against Appellants Dugas 1998 Irrevocable Trust, William Bruce Dugas Grandchild
Trust, and James Stephen Turner and Hurley Calister Turner, Jr., Co-Trustess of
the Dugas 1998 Irrevocable Trust f/b/o William Bruce Dugas.  I concur with the
Majority Opinion’s affirmance of the trial court’s order denying the special
appearances of these Appellants.

I
cannot agree, however, with the Majority Opinion’s holding that Texas courts
may exercise general jurisdiction over Appellant Dugas Limited Partnership
(Dugas LP).  The special appearance evidence conclusively established that,
despite a ten-year-old principal-place-of-business statement in Dugas LP’s initial
partnership agreement, in fact Dugas LP never had its principal place of
business in Texas and never did business in Texas.  The minimum contacts
required by the United States Constitution in order to comport with federal due
process in subjecting Dugas LP to the general jurisdiction of Texas courts must
be based on factual reality, not on an untrue statement in a ten-year-old
partnership agreement.  Because Dugas LP itself possesses no minimum contacts
with Texas, the Majority Opinion looks to the contacts of an entity owned by
Dugas LP in its minimum contacts analysis.  But the minimum contacts required
by the United States Constitution in order to comport with federal due process
in subjecting Dugas LP to the general jurisdiction of Texas courts must be
based on the contacts of Dugas LP itself, not upon a third party’s contacts
with Texas.  Because the majority holds that Dugas LP is subject to the general
jurisdiction of Texas courts based solely on a ten-year-old
principal-place-of-business statement in Dugas LP’s initial partnership
agreement and on Dugas LP’s ownership of an entity that possesses some contacts
with Texas, I am forced to dissent.

II.  Special Appearance Burdens of Pleading
and Proof

The
plaintiff and the defendant bear shifting burdens of proof in a special
appearance.  Kelly v. Gen. Interior Constr.,
Inc., 301 S.W.3d 653, 658 (Tex.
2010).  The plaintiff bears the initial burden to plead sufficient
allegations to bring the nonresident defendant within the reach of Texas’s
long-arm statute.  Id.  Once the plaintiff has pleaded sufficient
jurisdictional allegations, the defendant filing a special appearance bears the
burden to negate all bases of personal jurisdiction alleged by the plaintiff.  Id. 
Because the plaintiff defines the scope and nature of the lawsuit, the
defendant’s corresponding burden to negate jurisdiction is tied to the
allegations in the plaintiff’s pleading.  Id.  The defendant can negate
jurisdiction on either a factual or legal basis.  Id. at 659.  Factually,
the defendant can present evidence that it has no contacts with Texas, effectively
disproving the plaintiff’s allegations.  Id.  The plaintiff can then
respond with its own evidence that affirms its allegations, and it risks
dismissal of its lawsuit if it cannot present the trial court with evidence
establishing personal jurisdiction.  Id.  Legally, the defendant can
show that even if the plaintiff’s alleged facts are true, the evidence is
legally insufficient to establish jurisdiction; that the defendant’s contacts
with Texas fall short of purposeful availment; or that traditional notions of
fair play and substantial justice are offended by the exercise of
jurisdiction.  Id.

III.  The Pleadings and The Evidence

In their original
petition, Appellees pleaded,

Defendant
Dugas Limited Partnership (“Dugas, LP”), is a limited partnership incorporated
under the laws of the State of Delaware, with a corporate general partner,
Dugas Asset Management Corp., a Delaware Corporation.  Dugas LP may be served
with process pursuant to the Texas Long Arm Statute.  Dugas, LP is doing
business in the State of Texas by, for example, entering into agreements,
making distributions and/or loans to individuals in Texas, retaining counsel in
Texas, negotiating payments in Texas, and asserting rights to real and personal
property in Texas, but has not designated a resident agent in the State of
Texas upon whom service of process can be made.[17]

 

In
its special appearance, Dugas LP pleaded,

Defendant
Dugas Limited Partnership is a limited partnership established under the laws
of Delaware.  Dugas Limited Partnership does not do business in the State of
Texas.  Dugas Limited Partnership owns no assets in the State of Texas.  Dugas
Asset Management Corp., a Delaware corporation, is its general partner.  Dugas
Asset Management Corp. does not do business in the State of Texas.  Dugas Asset
Management Corp. does not own assets in the State of Texas.

 

In
their response to Dugas LP’s special appearance, Appellees pleaded,

Dugas
LP is a resident of Texas, and is therefore subject to jurisdiction on all
claims asserted against it in this case.

 

. .
. .

 

By
designating Aubrey, Texas as Dugas LP’s principal place of business, Dugas LP
is present in Texas regardless of where it actually carries on the partnership
business.  The Dugas LP Agreement sets out clearly that its principal place of
business is in Denton County, Texas.  Under Texas law, venue is proper against
a partnership wherever its principal office is located.  Personal jurisdiction
is proper where venue is based on the defendant’s presence in the county. 
[Internal citations omitted.]

 

At
the special appearance hearing, Dugas LP proffered the affidavits of David M.
Wilds and Amy Freeney.  Wilds’s affidavit indicates that since 1998, he has served
as the Chief Financial Officer for The Family Office, L.L.C., a Tennessee
limited liability company established by the Turners and the Dugases to provide
services to their family members and their trusts.  Wilds explained,

The
Dugas Limited Partnership is a limited partnership organized under Delaware
law.  It was created in 1998.  Its general partner is Dugas Asset Management
Corporation, a Delaware corporation.  Dugas Asset Management Corporation owns
no real estate in Texas, it has no bank accounts in Texas, it has never filed
suit in Texas, nor has it ever sought protection from creditors in Texas. 
Dugas Asset Management Corporation has no offices, no employees, and does not
do business in Texas.  Dugas Limited Partnership owns no real estate in Texas,
it has no assets in Texas, it has no bank accounts in Texas, it has never filed
suit in Texas, nor has it ever sought protection from creditors in Texas. 
Other than retaining counsel in Texas for representation in the lawsuit filed
by [Appellees] against it in the Denton County Probate Court, the Dugas Limited
Partnership does not do business in Texas.

 

Freeney’s
affidavit stated that she is the tax manager for The Family Office and that

Dugas
Limited Partnership is a limited partnership organized under Delaware law.  It
was created in 1998.  Its general partner is Dugas Asset Management
Corporation, a Delaware corporation.  Dugas Limited Partnership has always had
its principal place of business in Nashville[,] Tennessee, all of its books and
records have always been kept there and I have been the custodian of such
records since the inception.  Dugas Limited Partnership has never maintained
another office and has never employed any employees.  It has never had its
principal office in Texas.  All the business of Dugas Limited Partnership is
conducted in and through The Family Office in Nashville, Tennessee, since
1998.  Dugas Limited Partnership has never designated a registered agent for
service of process in Texas.

 

IV.  The Law Concerning General Jurisdiction

A nonresident defendant is subject to the personal
jurisdiction of Texas courts if (1) the Texas long-arm statute authorizes the
exercise of jurisdiction, and (2) the exercise of jurisdiction does not violate
federal and state constitutional due process guarantees.  Id. at 657; Schlobohm
v. Schapiro, 784 S.W.2d 355, 356 (Tex. 1990).  The broad “doing business”
language in Texas’s long-arm statute allows the trial court’s jurisdiction to “reach
as far as the federal constitutional requirements of due process will allow.”  Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 575 (Tex. 2007) (quoting Guardian
Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223,
226 (Tex. 1991)).  The Due Process Clause protects a defendant’s liberty
interest in not being subject to the binding judgments of a forum with which it
has established no meaningful “contacts, ties, or relations,” that is “minimum
contacts.”  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471–72, 105 S.
Ct. 2174, 2181–82 (1985).  A defendant establishes minimum contacts with a
state when it purposefully avails itself of the privilege of conducting
activities within the forum state, thus invoking the benefits and protections
of its laws.  Retamco Operating, Inc. v. Republic Drilling Co., 278
S.W.3d 333, 338 (Tex. 2009).   The focus of a due process minimum
contacts analysis is on the nonresident defendant’s activities and
expectations.  Michiana Easy Livin’ Country, Inc. v. Holten, 168
S.W.3d 777, 790 (Tex. 2005); Am. Type
Culture Collection, Inc. v. Coleman,
83 S.W.3d 801, 806 (Tex. 2002), cert. denied, 537 U.S. 1191 (2003).  There are three parts to a purposeful availment
inquiry:  (1) only the nonresident defendant’s contacts with the forum are
relevant, not the unilateral activity of another party or a third person; (2)
the contacts relied on must be purposeful rather than random, fortuitous, or
attenuated; and (3) the nonresident defendant must seek some benefit,
advantage, or profit by availing itself of the jurisdiction.  See Moki Mac
River Expeditions, 221 S.W.3d at 575; Michiana Easy Livin’ Country, Inc.,
168 S.W.3d at 784–85.

A nonresident defendant’s contacts with a forum state
can give rise to (a) general jurisdiction or (b) specific jurisdiction.  See
PHC-Minden, L.P. v. Kimberly-Clark Corp., 235 S.W.3d 163, 166 (Tex. 2007);
Moki Mac River Expeditions, 221 S.W.3d at 575–76.  General
jurisdiction is a more demanding minimum-contacts analysis, requiring a showing
that the defendant conducted substantial activities within the forum.  CSR,
Ltd. v. Link, 925 S.W.2d 591, 595 (Tex. 1996).  General jurisdiction exists when the defendant in question has “continuous
and systematic general business contacts” with the forum state.  Helicopteros
Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416, 104 S. Ct. 1868,
1873 (1984).  General jurisdiction is based upon the concept of a bargain
between the nonresident defendant and the forum state.  If the defendant has
established continuous and systematic general business contacts with the state,
it is deemed to have purposely availed itself of the protections and benefits
of the forum’s law, and thereby to have consented to suit in the forum.  See
Bearry v. Beech Aircraft Corp., 818 F.2d 370, 375 (5th Cir. 1987).

V.  Standard of Review

Whether
a court can exercise personal jurisdiction over nonresident defendants is a
question of law, and thus we review de novo the trial court’s determination of
a special appearance.  Moki Mac River Expeditions, 221 S.W.3d at 574; BMC
Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  “When
[as here] a trial court does not issue findings of fact and conclusions of law
with its special appearance ruling, all facts necessary to support the judgment
and supported by the evidence are implied.”  BMC Software, 83 S.W.3d at
795.

VI.  Dugas LP Is Not Subject to the General Jurisdiction of
Texas Courts

Once
Appellees pleaded that Dugas LP was doing business in Texas by entering into
agreements, making distributions and/or loans to individuals in Texas,
retaining counsel in Texas, negotiating payments in Texas, and asserting rights
to real and personal property in Texas, the burden shifted to Dugas LP to
negate these bases of jurisdiction either factually or legally.  See Kelly,
301 S.W.3d at 658. Dugas LP factually negated Appellees’ pleaded bases for
jurisdiction through the affidavits of Wilds and Freeney.  As set forth above,
Wilds’s and Freeney’s affidavit testimony specifically factually negated
Appellees’ allegations.  The affidavits established that neither Dugas LP nor
its general partner Dugas Asset Management Corporation did business in Texas,
owned real estate in Texas, had any bank accounts in Texas, had ever filed suit
in Texas, or had ever sought protection from creditors in Texas.  Freeney’s
affidavit affirmatively stated that Dugas LP had never maintained an office
outside of Tennessee, had never had its principal place of business anywhere
but Tennessee, and conducted all business through its Tennessee office. 
Wilds’s affidavit stated that Dugas Asset Management Corporation has no
offices, no employees, and does not do business in Texas.  Thus, the burden
shifted back to Appellees to respond with their own evidence that affirmed
their pleaded allegations.  See id. at 659.

Appellees
did not produce any evidence supporting their pleaded allegations.  Instead,
Appellees simply pointed to the statement in Dugas LP’s ten-year-old initial
partnership agreement that Dugas LP’s principal place of business was in
Texas.  The statement in Dugas LP’s initial ten-year-old partnership agreement,
however, is legally insufficient to support general jurisdiction over Dugas
LP.  That is, Dugas LP legally negated this purported basis for jurisdiction by
proving that although the fact is true—Dugas LP’s initial ten-year-old
partnership agreement does state that its principal place of business will be
in Texas—this fact is legally insufficient to support personal general
jurisdiction over Dugas LP because its contacts with Texas nonetheless fall
short of purposeful availment.  See id. (recognizing that defendant can
legally negate plaintiff’s alleged basis for jurisdiction by proving that even
if plaintiff’s alleged facts are true, they fall short of establishing
defendant’s purposeful availment).  Dugas LP legally negated this basis for
jurisdiction because a due process minimum contacts analysis requires physical
contacts with the forum state; words on a ten-year-old piece of paper that are
not true cannot satisfy the federal consitutional due process minimum contacts
analysis.  See Alenia Spazio, S.P.A., v. Reid, 130 S.W.3d 201, 212 (Tex.
App.—Houston [14th Dist.] 2003, pet. denied) (holding that, in absence of
special appearance evidence of “remaining officers operating in Texas or of any
activity by USRT [a limited liability company] in Texas” after August 1999,
special appearance evidence was legally insufficient to support finding that
USRT’s principal place of business was in Texas after August 1999 despite
statement in limited liability company’s agreement that “as of January 3, 1997”
its principal place of business was in Houston), cert. denied, 549 U.S.
821 (2006); see also Burger King Corp., 471 U.S. at 471–72, 105 S. Ct. at 2181–82
(recognizing that in order to subject a defendant to the binding judgments of a
forum, the defendant must have meaningful contacts, ties, or relations with the
forum).

          Although
no jurisdictional alter ego or veil-piercing theories were pleaded or argued by
the parties, the Majority Opinion notes that

[t]he only
asset of Dugas, LP that is identified in the partnerhip agreement is Dugas
Family Partners, a Texas General Partnership.  The partnership agreement lists
the fair market value of Dugas Family Partners at over $164 million. 
Therefore, based on this record, Dugas, LP’s only function is to manage the
valuable assets of a Texas General Partnership—an activity that requires Dugas,
LP to utilize Texas-based assets. [Citation omitted.]

 

The United
States Supreme Court and the Texas Supreme Court have repeatedly instructed us
that only the nonresident defendant’s contacts
with the forum are relevant, not the unilateral activity of another party or
a third person.  See, e.g., Burger King Corp., 471 U.S. at 474,
105 S. Ct. at 2183 (“The unilateral activity of those
who claim some relationship with a nonresident defendant cannot satisfy the
requirement of contact with the forum State.”); Hanson v. Denckla, 357
U.S. 235, 253, 78 S. Ct. 1228, 1239–40 (1958) (same); Moki Mac River
Expeditions, 221 S.W.3d at 575
(same); Michiana Easy Livin’ Country, Inc., 168 S.W.3d at 784–85
(same).  Thus, the fact that Dugas LP may own an entity that does business in
Texas is not relevant to a minimum contacts analysis in the absence of some
jurisdictional alter ego or veil-piercing allegations and proof, which are not
present in this case.  See, e.g., PHC-Minden, L.P., 235
S.W.3d at 172–76 (discussing proof necessary for jurisdictional veil-piercing
and concluding that court of appeals “erred in imputing Province’s Texas
contacts to Minden”).

I cannot agree with the Majority Opinion’s holding
that two facts––a ten-year-old, inaccurate statement in Dugas LP’s initial
partnership agreement that Dugas LP’s principal place of business was in Texas
and Dugas LP’s ownership of a Texas general partnership, a non-real property
asset––somehow constitute “doing business in Texas” and somehow satisfy the
rigorous minimum contacts analysis required by the Due Process Clause of the
United States Constitution to subject a defendant to the general jurisdiction
of Texas courts.  Neither of the facts relied upon in the Majority Opinion show
that Dugas LP purposefully availed itself of the privilege of conducting
activities within Texas.  Neither of the facts relied upon in the Majority
Opinion show that Dugas LP invoked the benefits and protections of Texas’s
laws.  Neither of the facts relied upon in the Majority Opinion show that Dugas
LP actually conducted any activities in Texas, much less substantial activities
within Texas.  Neither of the facts relied upon in the Majority Opinion show
continuous and systematic contact by Dugas LP with Texas.  Instead, the two
facts relied upon in the Majority Opinion bear no relevance to the required
minimum contacts analysis.

VII.  Conclusion

Because Dugas LP factually negated Appellees’ pleaded
bases for jurisdiction by establishing that it did not do business in Texas;
because Appellees did not come forward with any evidence supporting their
allegations that Dugas LP did do business in Texas; because Dugas LP legally
negated Appellees’ contention that the Texas courts possessed general
jurisdiction over it based on the inaccurate statement in its ten-year-old
initial limited partnership agreement; and because the majority’s reliance on
Dugas LP’s ownership of a Texas general partnership that has contacts with
Texas is not relevant in the absence of jurisdictional alter ego or
veil-piercing pleadings, I would reverse the trial court’s denial of Dugas LP’s
special appearance.  Because the majority does not do so, I respectfully
dissent to the Majority Opinion’s holding that general jurisdiction exists over
Dugas LP.  I would reverse the trial court’s order denying Dugas LP’s special
appearance.  I concur with the other holdings of the Majority Opinion.

 

SUE WALKER
JUSTICE

 

DELIVERED:  March 31, 2011









          [1]The
members of the Turner and Dugas families and the entities that are the subject
of this appeal are set out in the Appendix attached to this opinion.





          [2]Donna
filed an original petition for divorce in November 2005 in Denton County.  The
petition was still pending at the time of Bruce’s death, according to Donna.





          [3]Both
the Grandchild Trust and the Dugas 1998 Trust provide that property identified
in attached schedules belongs to the trusts, but no schedule is attached to the
Grandchild Trust, and no property is identified on the schedule attached to the
Dugas 1998 Trust.





          [4]Donna
subsequently nonsuited the Wayne F. Dugas, Sr. 1998 Trust.





          [5]According
to Donna, she and Pardue (on behalf of Bruce’s estate) have engaged in
settlement discussions in Texas but have not finalized a settlement agreement.





          [6]With
the exception of whether Dugas, LP’s principal place of business is Texas, the
material facts relied upon by each side in support of, or in opposition to, the
special appearances are undisputed.





          [7]We
may rely on precedent from federal courts in determining whether a nonresident
defendant has met its burden to negate all bases of jurisdiction.  BMC
Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002).





          [8]See
Cent. Ready Mix Concrete Co. v. Islas, 228 S.W.3d 649, 651 (Tex. 2007); City
of Keller v. Wilson, 168 S.W.3d 802, 807, 827 (Tex. 2005); Uniroyal
Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert.
denied, 526 U.S. 1040 (1999); Pool v. Ford Motor Co., 715 S.W.2d
629, 635 (Tex. 1986) (op. on reh’g); Garza v. Alviar, 395 S.W.2d 821,
823 (Tex. 1965); In re King’s Estate, 150 Tex. 662, 244 S.W.2d 660, 661
(1951).





          [9]The
partnership agreement states that “[t]he General Partner alone shall be
responsible for the management of the Partnership’s business” and shall
“(i) contribute its time, skill, energy, advice[,] and experience to the
management of the Partnership’s business; (ii) determine all matters
relating to the financing, management, and operation of the assets and property
of the Partnership; and (iii) manage the Partnership.”





          [10]The
partnership agreement expressly provides that Dugas, LP was formed by its
general partner, Dugas Asset Management Corp., and Dugas, L.P.’s limited
partners.





          [11]The
two cases that Dugas, LP cites are inapposite.  See BMC Software, 83
S.W.3d at 798 (considering whether nonresident entity was alter ego of
corporation headquartered in Houston); Tuscano v. Osterberg, 82 S.W.3d
457, 466–67 (Tex. App.—El Paso 2002, no pet.) (addressing fiduciary shield
doctrine).





          [12]Indeed,
the number of limited partners climbed to fifteen as of December 31, 2008.





          [13]Appellants
argue that Seijo does not support the trial court’s conclusion that
specific jurisdiction exists over them because “the standards applied by a
federal court in considering a motion to dismiss for lack of personal
jurisdiction differ[] from that employed by our state court.”  They point out
that the district court accepted evidence as true and, unlike in this case, did
not have to resolve factual disputes before conducting the minimum contacts
analysis.  To the extent this is a distinction between the standard applied by
the district court in Seijo and the standard we apply in this case, it
does not render Seijo inapposite.  We rely on Seijo only for its
substantive (persuasive) authority regarding the exercise of specific
jurisdiction over a nonresident trustee who voluntarily accepted the
responsibility of administering a trust for the benefit of a resident of the
forum.





          [14]Donna
states in her brief, “For the [Grandchild Trust], the beneficiaries resided in
Texas on the date the Trustees agreed to take on the duties set forth in the
Trusts.”  But we have not found any evidence in the record to support this
statement.  Instead, Donna testified in her deposition that she and Bruce moved
to Texas sometime around 1995.





          [15]Cal
and Steve, as co-trustees of the Dugas 1998 Trust, are defendants in that
action.





          [16]The
petition to probate Bruce’s will was filed in an Allen “District/Probate”
court.





[17]In
an amended petition filed after Dugas LP filed its special appearance,
Appellees added a sentence, pleading that Dugas LP’s general partner was Dugas
Asset Management Corporation, a Delaware Corporation, and that Dugas LP was
doing business in Texas by “designating its principal place of business in
Texas.”